# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kou Lor,                                                    Case No. 26-cv-1672 (ECT/DLM)

              Petitioner,

v.                                                         **REPORT AND**
                                                           **RECOMMENDATION**

Troy Schilling, in his capacity as Warden,
Crow Wing County Jail; David
Easterwood, in his capacity as Acting
Director of St. Paul Field Office; Kristi
Noem, in her capacity as Secretary of the
United States Department of Homeland
Security; Pamela Bondi, in her official
capacity as Attorney General of the
United States; Todd M. Lyons, in his
official capacity as Acting Director of the
United States Immigration and Customs
Enforcement,

              Respondents.

---

This matter is before the Court on Petitioner Kou Lor's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) In his Petition, Mr. Lor argues that his detention since January 5, 2026, by the Department of Homeland Security ("DHS") U.S. Immigration and Customs Enforcement ("ICE") is unlawful under the Due Process Clause of the Fifth Amendment, the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the *Accardi* doctrine. Accordingly, Mr. Lor demands his immediate release. Respondents object and contend that Mr. Lor's detainment is lawful under 8 U.S.C. § 1231 (Doc. 4).

1

Mr. Lor's Petition comes before the Court for review under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court.[1] The case has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons explained below, the Court recommends that Mr. Lor's Petition (Doc. 1) be granted.

## BACKGROUND

Mr. Lor was born in Laos. (Doc. 1 ¶ 3.) Fleeing persecution of their Hmong community, he and his family left Laos and, after spending several years in a Thai refugee camp, arrived in the United States in 1979. (Doc. 1 ¶¶ 3, 64) Mr. Lor has lived in the United States since then. (*Id.* ¶ 3.) On December 10, 1981, Mr. Lor became a Lawful Permanent Resident ("LPR"). (Doc. 7 ¶ 5.)  In 1993, Immigration and Naturalization Service ("INS") encountered Mr. Lor at a Minnesota state prison where he was serving concurrent sentences for several criminal convictions. (Doc. 7 ¶ 6.) Soon after, INS served Mr. Lor an Order to Show Cause Form, charging removability under § 241(a)(2)(A)(ii) of the INA. (Doc. 7 ¶ 7; *see* Doc. 5 at 2-8) On August 16, 1996, Mr. Lor received an Order of Removal from an immigration judge. (Doc. 7 ¶ 11; *see* Doc. 5 at 10.) That order became final one month later. (Doc. 7 ¶ 12.) Upon his release from prison in 2003, Mr. Lor was detained by ICE for ten months. (Doc. 1 ¶ 68; Doc. 7 ¶ 13.) On July 20, 2004, Mr. Lor was released from immigration detention on an Order of Supervision ("OSUP") because Laos did not issue

---

[1] Although Mr. Lor's Petition is not filed under 28 U.S.C. § 2254, the Court may apply the rules governing that section per Rule 1(b).

travel documents for Mr. Lor. (Doc. 7 ¶ 14; *see* Doc. 5 at 11-13.) At the time of Mr. Lor's removal order and at time of his release from detention, Mr. Lor was not a citizen of Laos. (Doc. 1 ¶ 66.) In fact, in 2004, Laos implemented a new law that stripped Laotian citizenship from any national who had left the country for more than seven years. Accordingly, Laos did not issue the necessary travel documents. (Doc. 7 ¶ 14.) Because Mr. Lor could not return to the country of his birth on lawful travel documents, immigration agents found there to be no reasonably foreseeable likelihood of removal and placed Mr. Lor on supervised release. (Doc. 1 ¶ 4; Doc. 7 ¶ 14.).

Since 2004, Mr. Lor has complied with the requirements of his supervised release, including regular check-ins with immigration officials. (Doc. 1 ¶ 69.) Mr. Lor has never violated the terms of his release. (*Id*.) And up until December 2025, Mr. Lor worked in the United States through a work permit; he stopped when a new federal policy forbade his renewal of that permit. (Doc. 1 ¶¶ 2, 66.) Mr. Lor has not lived in Laos since his infancy. (Doc. 1 ¶ 64.) His life is American: he is a husband to a U.S. citizen and father to five U.S. citizen children. (Doc. 1 ¶ 2.)

On January 5, 2026—after close to fifty years of residence in the United States and twenty-two years of lawful supervised release—Mr. Lor was arrested by ICE without a warrant following his appearance at a supervised release check-in. (Doc. 1 ¶¶ 7, 70.) Initially, Mr. Lor was detained at the Henry Bishop Whipple Federal Building. (Doc. 1 ¶ 70.) On January 7, 2026, ICE placed Mr. Lor on a plane headed to El Paso, but officials removed him at the last moment and instead transported him to Crow Wing County Jail, where he has since been detained. (Doc. 1 ¶¶ 8, 70.) On January 9, 2026, ICE served

Petitioner with a Notice of OSUP Revocation ("Notice"). (Doc. 7 ¶ 15, *see* Doc. 5 at 16.) By way of explanation for the revocation, the Notice states simply that "changed circumstances" merit the revocation of Mr. Lor's release. (Doc. 5 at 15.) Mr. Lor represents, however, that he has not received any document notifying him of his release revocation, and that he has not been afforded an informal interview to contest that revocation. (Doc. 1 ¶¶ 9, 70, 102, 109.) On January 18, 2026, immigration officials submitted a travel document request to "HQ Removals International Operation," and the country of Laos issued a travel document for Mr. Lor. (Doc. 7 ¶ 16.) Petitioner is now "manifested" on an upcoming charter flight to Laos, a country he has not known since the age of two. (*Id.*)

### 8 U.S.C. § 1231

The statutory framework codified at 8 U.S.C. § 1231 provides that the Attorney General shall remove a person present unlawfully in the United States "within a period of 90 days" after a final order of removal. 8 U.S.C. § 1231(a)(1)(A). When the government fails to remove someone within that 90-day window, any enduring detention may be unlawful unless there is a significant likelihood of removal in the reasonably foreseeable future. *Zadvydas v. Davis*, 533 U.S. 678, 700-01 (2001). A period of detention for more than six months in these circumstances is presumptively unreasonable. *Id.*

### 8 C.F.R. § 241.13(i)

8 C.F.R. § 241.13 outlines the conditions that must be met for the government to revoke the release of a noncitizen subject to an order of supervision. Release may be revoked where the noncitizen violates the conditions of his release. 8 C.F.R. § 241.13(i)(1).

Revocation and return to custody may also occur, "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id*. § 241.13(i)(2). "Upon revocation," the noncitizen must be notified of the reasons for revocation of his release. *Id*. § 241.13(i)(3). "Promptly" after the noncitizen returns to custody upon revocation, immigration officials must conduct an interview to afford the noncitizen "an opportunity to respond to the reasons for revocation stated in the notification." *Id*. At that point, the noncitizen may submit evidence to show that there is no significant likelihood of removal in the reasonably foreseeable future. *Id*. The subsequent revocation custody review must include an evaluation of contested facts and a "determination whether the facts as determined warrant revocation and further denial of release." *Id*.

### Mr. Lor's Petition Challenging Detainment

Mr. Lor challenges his detainment on the grounds that the government failed to follow its own procedure. He argues that the government failed to follow the mandates of 8 C.F.R. § 241.13 when it detained him before issuance of the Notice; when it failed to provide adequate grounds within the Notice; and when it denied him an opportunity to contest the Notice. Mr. Lor argues that the Respondents' subsequent briefing also fails to allege "changed circumstances" such to justify the revocation of his release. Overall, says Petitioner, these procedural blunders violate agency regulation codified at 8 C.F.R. § 241.13, as well as the INA, the APA, and the *Accardi* doctrine. Accordingly, he demands his immediate release.

Respondents, for their part, sidestep Mr. Lor's § 241.13 arguments and instead contend Petitioner has not established the illegality of his detention under 8 U.S.C. § 1231. Leaning on *Zadvydas*, they argue that changed circumstances exist, leading to a significant likelihood of removal in the reasonably foreseeable future because immigration officials have obtained Laotian travel documents and because Mr. Lor is scheduled for a charter flight to Laos at an undisclosed time in the near future.

## LEGAL STANDARD

The writ of habeas corpus is a procedure available to prisoners to create government accountability for unlawful detention. *See Peyton v. Rowe*, 391 U.S. 54, 58 (1968); *Ex parte McCardle*, 73 U.S. (6 Wall.) 318, 325-26 (1867). That right extends to "persons challenging the lawfulness of immigration-related detention. *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). In such cases, it is the Petitioner who bears the burden of proving by a preponderance of the evidence that their detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v. U.S. Prob. & Pretrial Servs.*, No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

## ANALYSIS

The government's authority to re-detain noncitizens on supervised release is not without limit. It is bounded by those rights to which all are entitled under the Constitution, and by the government's own regulations codified at 8 C.F.R. § 241.13. These regulations are not advisory. They bind the government to act in accordance with their substance and

procedure. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). In this case, Respondents did not follow their own rules. The Court recommends that Mr. Lor's Petition be granted.

At the outset, the Court observes that 8 C.F.R. § 241.13 is relevant to Mr. Lor but *Zadvydas* is not. Courts across the country, including those in this District, differentiate Petitioners released subject to OSUP where a final removal order determination has already been made from "typical *Zadvydas* Petitioners" who are detained continuously from the time of their order for final removal. *Vang v. Bondi*. 26-CV-1381 (JMG/DLM), 2026 WL 458195, at *4 (D. Minn. Feb. 18, 2026) ("But *Zadvydas* does not apply to noncitizens subject to an order of supervision, where there has *already been* a determination that a noncitizen is not likely to be removed.).[2] Respondents' insistence on the applicability of

---

[2] *See also Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at *4 (D. Md. Sept. 8, 2025) ("*Zadvydas* contemplated only the situation in which a noncitizen was continuously detained from the issuance of the removal order while efforts to execute the removal were ongoing ... and did not directly address the situation presented here, where a noncitizen was not detained upon the issuance of the removal order, remained on release for over 17 years, and only then was subjected to post-removal order detention for the first time."); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025) ("This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to *re-detain* Mr. Nguyen after he was issued a final order of removal, detained, and subsequently released on an OSUP. The DHS regulation, 8 C.F.R. § 241.13(i), applies to non-citizens in Petitioner's situation."); *Nguyen v. Bondi*, No. EP-25-CV-323-KC, 2025 WL 3120516, at *4 (W.D. Tex. Nov. 7, 2025) ("Unlike a typical *Zadvydas* petitioner, who is detained continuously from the time of their final removal order, Nguyen was released pursuant to an OSUP and lived at liberty in the United States for nearly thirteen years."); *Trejo v. Warden of ERO El Paso E. Mont.*, 25-cv-401, 2025 WL 2992187, at *6-7 (W.D. Tex. Oct. 24, 2025) (same).

*Zadvydas* misses the mark. Mr. Lor is a noncitizen who was released from immigration detention on supervised release after a final removal order twenty-odd years ago who now faces revocation of that release: this is the precise circumstance contemplated by § 241.13. *See Levkovich v. Trump*, 26-cv-938 (SHL/DLM) (D. Minn. Feb. 8, 2026.) ("Petitioner was released more than twenty years ago in exactly the manner contemplated by 8 U.S.C. § 1231(a) and 8 C.F.R. § 241.13(h). There was a final order of removal against him, but his native country would not allow him to be returned."). Though Respondents make scarce mention of § 241.13 and never once discuss its requirements for release of revocation (*see* Doc. 4 at 5, 6, 11), the Court finds it—not *Zadvydas*—to be the proper framework by which to consider Mr. Lor's claims.

## I.   IMPROPER NOTICE

Petitioner contends that the first issue arose when Respondents detained Mr. Lor for four days before his supervised release was revoked, and without a warrant that stated any grounds for his arrest.[3] Respondents do not contest this timeline, nor do they provide any legal basis to justify Mr. Lor's arrest and detainment before the revocation. Accordingly, the Court agrees with Petitioner that his detainment prior to the issuance of the Notice violated 8 C.F.R. § 241.13 and merits his release.

---

[3] As other Courts in this District have noted, the warrantless nature of Petitioner's arrest raises the troubling possibility his arrest was motivated by unlawful purposes. *See Pham v. Noem*, No. 26-cv-1445 (ECT/DJF) (D. Minn. March 3, 2026) ("Respondents' failure to produce a warrant or any legal authorization to detain [Petitioner] at the time of his arrest raises the possibility that they arrested him for arbitrary, discriminatory or other unlawful reasons and then revoked his supervised release later to justify it.").

Consistent with the safeguards of due process, the purpose of a notice is to provide advance warning to a person whose liberty may be impinged by government action. A notice *after* a detainment is no notice at all. Accordingly, and as other Courts in this District and across the country have held, the issuance of a Notice of Revocation after detainment of a noncitizen on supervised release is impermissible. *Pham v. Noem*, No. 26-cv-1445 (ECT/DJF) (D. Minn. March 3, 2026) (concluding six-day detainment before revocation of supervised release violated immigration regulation); *see also M.S.L. v. Bostock*, No. 6:25-cv-1204 (AA), 2025 WL 2430267, at *10, 12 (D. Or. Aug. 21, 2025) (same). In this case, Respondents issued the Notice four days after Mr. Lor's detainment, though Mr. Lor in fact contests ever receiving the Notice. (Doc. 1 ¶ 9.)Either way, the record shows that Respondents failed to provide timely notice of revocation to Mr. Lor in violation of 8 C.F.R. § 241.13.

Second, the Notice itself, like the notice in *Pham*, is unduly vague and void of reasons that explain the revocation of Mr. Lor's release. It states only that "[t]his decision [the revocation] has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case." (*See* Doc. 5 at 15.) But under agency regulation, a noncitizen must be provided reasons for the revocation under government regulation. *See* 8 C.F.R. § 241.13(i)(3). Here, the Notice makes no such reasons apparent. At most, the Notice slaps on boilerplate legal conclusions that mimic 8 C.F.R. § 241.13's language but fall short of its substantive requirements. This matters: without reasons for the revocation, Mr. Lor is foreclosed from challenging the decision and presenting rebuttal evidence and argument at the subsequent interview, as is his right under

9

8 C.F.R. § 241.13(i)(3). *See Sarail A. v. Bondi,* 803 F. Supp. 3d 775, 781 (D. Minn. Sept. 3, 2025) ("notification 'of the reasons for revocation' requires ICE to do more than state that circumstances have changed."). The record of Mr. Lor's January 9 'interview' (which he denies having received (*see* Doc. 1 ¶ 9)) further confirms Respondents' failure to provide meaningful information and opportunity to contest to Mr. Lor. (*See* Doc. 5 at 17.) Respondents' failure to provide adequate notice of the revocation of release is reason alone to grant Mr. Lor's Petition. *See Sarail A.,* 803 F. Supp. 3d at 781-84 (granting habeas petition based party on government's failure to provide adequate notice of the reasons for revocation); *Pham v. Noem,* No. 26-cv-1445 (ECT/DJF) (D. Minn. March 3, 2026) (same); *Dusan C. v. Bondi,* No. 26-cv-620 (JRT/ECW), 2026 WL 458128, at *4 (D. Minn. Feb. 13, 2026) (same); *Xayakesone v. Noem,* No. 25-cv-2995 (JES/BJW), 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, CASE 0:26-cv-01445-ECT-DJF (same). Accordingly, the Court recommends that Mr. Lor's Petition is granted.

## II.    INADEQUATE GROUNDS

Next, Petitioner contests Respondents' grounds for revocation. Petitioner argues that the fact that DHS has purchased a plane ticket and secured travel documents to Laos is alone insufficient to establish changed circumstances that lead to the reasonably foreseeable likelihood of removal under agency regulation. Respondents contend that it is. Although the inadequate notice of Mr. Lor's revocation alone merit his release, the Court finds that the reasons proffered by Respondents for revocation likewise prove inadequate.

Eight C.F.R. § 241.13 requires immigration officials to identify "changed circumstances" upon revocation that lead them to conclude that a noncitizen on supervised

release may be removed in the reasonably foreseeable future. Based on the statutory language "upon revocation," courts across the country have held that the changed circumstances finding must be made before a noncitizen's supervised release is revoked, not after. 8 C.F.R. § 241.13(i)(3). Post-hoc rationalizations are impermissible, and support petitioners' release. *Pham v. Noem*, No. 26-cv-1445 (ECT/DJF) (D. Minn. March 3, 2026); *Vang v. Bondi*, 26-CV-1381, 2026 WL 458195, at *3, (D. Minn. Feb. 18, 2026) ("it is the government's burden to show a change in circumstance *before* revoking an order of supervision and detaining a person indefinitely."); *see also Tran v. Noem*, No. 3:25-CV-02391-BTM-BLM, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) ("§ 241.13(i)(2) requires that [the changed circumstances] determination is made before the removable alien has had his release revoked"); *Munagi v. McDonald*, No. 25-13175-NMG, 2025 WL 3688023, at *3 (D. Mass. Dec. 19, 2025) ("The question before the Court is not whether petitioner's deportation is now likely in the reasonably foreseeable future but whether such likelihood existed at the time his OSUP was revoked.").

In this case, Respondents have failed to demonstrate the changed circumstances that existed *upon revocation*. Accordingly, the Court finds inadequate grounds for revocation. For twenty-two years, Mr. Lor complied in full with the requirements of his supervised release. That remained true upon his detainment on January 5, 2026 when he appeared before immigration officials in compliance with the terms of his OSUP. At that time, immigration officials identified no changed circumstances in Mr. Lor's case. On January 9, 2026, when the Notice was issued, they also identified no changed circumstances. Now, in their March 2026 briefing—two months after Mr. Lor's detainment—Respondents

summon-up changed circumstances that create a reasonably foreseeable likelihood of Mr. Lor's removal, namely, the travel documents to Laos. But clearly Respondents had not identified those circumstances "upon" the revocation of Mr. Lor's release as required under Respondents' own regulations. This fact makes the stated grounds for revocation inadequate.

So, although the government went through the motions of C.F.R. § 241.13 by issuing a Notice of Revocation, interviewing Mr. Lor, and identifying changed circumstances, it did so incompletely and inadequately. The government is bound to respect the statutory and constitutional rights of noncitizens. Here, it did not. The Court recommends that Mr. Lor's Petition be granted and that he be released from detention immediately.

## III.   NO EVIDENTIARY HEARING IS REQUIRED

An evidentiary hearing is appropriate only when material facts are in dispute. *Ruiz v. Norris*, 71 F.3d 1404, 1406 (8th Cir. 1995). An evidentiary hearing is not required when a conclusion can be reached on the issue with the undisputed facts. *United States v. Winters*, 411 F.3d 967, 973 (8th Cir. 2005). This matter can be resolved based on the existing record, and thus the Court finds no evidentiary hearing is necessary.

## IV.   OBJECTIONS

Given the expedited nature of these proceedings, the Court exercises its discretion to alter the standard timelines for Respondents to file objections to this Report and Recommendation. *See* L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days

after being served with a copy of the recommended disposition, unless the court sets a different deadline.") (emphasis added). Respondents must file any objection to this Report and Recommendation on or before **March 17, 2026**. Mr. Lor may file a response to any objections on or before **March 19, 2026**.

**RECOMMENDATION**

Accordingly, based on all the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1.    Petitioner Kou Lor's Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED**; and;

2.    Respondents be ordered to release Petitioner Lor from custody:

   a.  Immediately;

   b.  Inside the State of Minnesota;

   c.  At a safe time and place communicated in advance to counsel;

   d.  And with all of Petitioner's personal effects in Respondents' possession or control, including, but not limited to, Mr. Lor's driver's license, immigration paperwork, work authorization, cell phone, keys, clothing, personal effects.

Date: March 13, 2026                         *s/Douglas L. Micko*
                                             DOUGLAS L. MICKO
                                             United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may typically file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the Report and Recommendation; and a party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). **However, as noted above, the Court has altered the deadlines for objections and responses: all objections are due no later than March 17, 2026; all responses are due no later than March 19, 2026.** All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).